# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Craig P. Taffaro, Jr. | Civil Action |
| Plaintiff, | No. 12-2720 |
| versus | |
| | Judge Martin Feldman |
| David E. Peralta, et al. | |
| Defendants. | Magistrate Karen Roby |

### OPPOSITION TO TAFFARO'S MOTION FOR GAG ORDER BY MCGOEY, DILLON, DEHARDE, BOURGEOIS, ST. BERNARD PARISH GOVERNMENT

Defendants St. Bernard Parish, St. Bernard Parish Government, William M. McGoey, Clay Dillon, Craig DeHarde, and Donald Bourgeois, through undersigned counsel oppose Craig Taffaro's Motion for Gag Order (ECF document #78) for the reasons set forth below.

### Introduction

On March 5, 2013, Henry Klein, counsel for Mr. Taffaro, wrote to the attorneys representing all but one defendant in this case to say that he would assume there were no objections to a voluntary gag order unless he heard otherwise. Mr. Klein attached a draft motion to his email that indicated that all the other parties' counsel consented to it. At the time, St. Bernard Parish was unrepresented.[1] Undersigned counsel objected to the imposition of a gag order by email reply as well as by fax. Leonard Levenson, counsel for David Peralta, agreed to speak to his client about a gag order but expressed concerns over the exact extent of such an order. Undersigned counsel did

---

[1] The Parish Council has since hired Williams & Rome, L.L.C., to represent the Parish.

not receive any communication from counsel for Jarrod Gourgues on the subject. The March 5 email thread is attached to this memorandum as Exhibit A. Two days later, Mr. Klein again wrote defense counsel asking if anyone opposed a gag order. Mr. Levenson stated that he would be willing to discuss a gag order but that the one previously presented by Mr. Klein would need modification. Sal Gutierrez, counsel for Jarrod Gourgues, reported that his client opposed a gag order, and undersigned counsel reiterated his opposition. The March 7 email thread is attached to this memorandum as Exhibit B.

On March 7, 2013, undersigned counsel also sent letters to six entities who are likely to have discoverable records asking that they preserve them. ECF document #61-2, Exhibits F–K. The letters explicitly stated that discovery had not yet begun in this matter and did not request the production of documents or records or require any response by the addressees at all. Undersigned counsel provided a copy of those letters to all the other attorneys in this case via email on the same day he sent them. ECF document #61-2, Exhibit E.

A few days later, Mr. Taffaro filed a document styled "Ex-parte Motion for 'Gag' Order (i) Prohibiting Comments to Media (ii) Prohibiting Extrajudicial Communications with Third Parties, and (iii) Prohibiting Violation of the Letter and Spirit of Court's Order of March 5, 2013." ECF document #61. That motion was marked deficient and eventually struck from the record. It was refiled as document #78. In that motion and the supporting memorandum, Mr. Taffaro asks this Court to impose a gag order and suggests that the Court sanction undersigned counsel and his clients, presumably for refusing to consent to the gag order and for requesting that third parties preserve discoverable documents that may be relevant to this lawsuit.

## Law & Argument

### I.      No gag order is warranted in this case.

Instead of outlining the contours of the gag order he is requesting and supporting his request with law and argument, Mr. Taffaro spends only one half of one paragraph of his memorandum addressing the requested relief. Mr. Taffaro's argument in support of his motion is reproduced in its entirety here:

> (i) **Proposed GAG [sic] order.** We rely on the 5th Circuit unreported opinion in <u>United States v. Hill</u>, Docket Number 10-10350, annexed as <u>Exhibit L</u> for the Court's convenience, and cases cited therein. Using that case as a guideline, we propose that all parties be prohibited from making extrajudicial comments to the press, news media, or third parties not involved in this litigation.

The balance of Mr. Taffaro's memo concerns undersigned counsel's preservation letters and this Court's power to sanction undersigned counsel and his clients.

At the outset, the Court should note that the *Hill* case that Mr. Taffaro cites concerning gag orders is an appeal from a criminal conviction for violating such an order issued in connection with a criminal jury trial. On review were only two issues: whether the order was reasonably specific and whether the government proved the defendants' intent to violate the order. *United States v. Hill*, 420 Fed.Appx. 407, 410 (5th Cir. 4/1/2011) (unreported).  The gag order itself was not analyzed beyond its specificity, and *Hill* provides no guidance regarding when a gag order or similar relief is appropriate.

*Hill* is inapposite to this matter because no gag order has been entered by this Court. Since no such order has been entered, it is not possible to analyze the specificity of the order or to determine whether someone violated it. The precedential value of *Hill* is limited to these two issues; anything else contained therein is *obiter dicta* and lacks precedential value.

In this case, there is no jury pool for any information to spoil. Mr. Taffaro is a public figure, and the media and the public have a strong interest in this case, because it involves his conduct as a public servant. As far as undersigned counsel is aware, neither his clients, other parties, nor their attorneys have made any inflammatory or scandalous comments to the media that might suggest a gag order is appropriate. Finally, the gag order suggested by Mr. Taffaro's counsel would hamstring the defendants in their ability to investigate Mr. Taffaro's claims by making it contempt of this Court for them to speak to any third party about the matters raised in Mr. Taffaro's complaint. In short, there is no good reason to restrain anyone's speech in connection with this lawsuit.

## II. The motion should be denied because the requested gag order constitutes an impermissible prior restraint on free speech and would hamstring the defendants' ability to defend themselves.

Mr. Taffaro's memo does not cite any other authority or make any other argument supporting his request for a gag order. Nor does he describe the specific contours of such an order in this case. The request for a gag order should be denied, as the requested order would constitute an unconstitutional prior restraint on the trial participants' right to free speech under the First Amendment, improperly abridge the media's rights to receive information and to speak freely, and will hamper the defendants' ability to investigate the plaintiff's claims and to defend themselves.

Prior restraints on speech have been strongly disfavored for generations. *See, e.g., Near v. Minnesota*, 283 U.S. 697, 733–34 (1931). "There is a strong presumption against the constitutionality of any prior restraint, and the burden of justification is therefore heavier than that imposed in cases involving only subsequent restrictions on freedom of expression." *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 473 (5th Cir. 1980). "In general, a prior restraint may be justified

only if the expression sought to be restrained surely (will) result in direct, immediate, and irreparable damage." *Id.* (internal quotation marks and citations omitted). And the restraint "must fit within one of the narrowly defined exception to the prohibitions against prior restraints." *Id.* at 474, citing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). *Viz.*, the "publication (sought to be restrained) must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea." *Bernard*, 619 F.2d at 474, quoting *New York Times Co. v. U.S.*, 403 U.S. 713, 726–27 (1971).

Mr. Taffaro has not demonstrated (or even argued) that his suggested prior restraint on the defendants' speech fits within some exception to the prohibition against prior restraints. Nor can he show that such a restraint will prevent direct, immediate, and irreparable damage. To the contrary Mr. Taffaro's motion explicitly states that "[i]t is too late to repair the damage caused to Craig Taffaro." ECF document 78 ¶ 7. Mr. Taffaro does argue that "his claim for compensatory damages is growing each day his life is tarnished by scandal," ECF document 78-1 p. 2, but does not elaborate how the defendants are still tarnishing his conduct. Nor does Mr. Taffaro explain how undersigned counsel requesting that non-parties preserve relevant, discoverable records could possibly damage him.

Since Mr. Taffaro has not bested the constitutional presumption against prior restraints on speech, his motion for a gag order should be denied. Moreover, this request cannot fit within any of the exceptions to the general prohibition against such a restraint. Accordingly, no prior restraint on the speech of the trial participants is warranted or constitutionally permissible.

**III.    A motion for a gag order is not the appropriate procedural vehicle for Mr. Taffaro to object to or challenge any party's discovery requests or plan, and a motion for a protective order would be untimely.**

At the outset, the Court should note that the parties have not yet had the required discovery conference under Rule 26 and that discovery is presently suspended while the Parish's and Parish-employee defendants' special motion to strike remains outstanding. To date, no formal discovery has been conducted to date by undersigned counsel.

Mr. Taffaro objects to undersigned counsel's investigation into certain matters and contact with certain people. A gag order is an improper procedural vehicle for disputing the relevance and propriety of discovery requests or plans. Discovery requests and plans must first be made before they can be challenged. If Mr. Taffaro or the recipient of the request objects to a particular request, a motion for a protective order under Rule 26 can provide the appropriate remedy. Mr. Taffaro also objects to the letter sent to the Drug Court because client files there are confidential. Undersigned counsel has not requested any client files (or any records at all), but if he does request something confidential in the future, the Drug Court and Mr. Taffaro may both raise the issue at that time without waiving any privilege or other legal protection. Mr. Taffaro is seeking to curtail the defendants' rights to investigate his claims and to foreclose certain avenues of discovery before discovery has even begun and he is doing so through an improper procedural device. Therefore, his request for a protective order—despite being dressed up as a request for a gag order—is frivolous and should be denied.

**IV.    Mr. Taffaro's request for sanctions is frivolous and should be denied.**

It is fundamental to the law that defendants have the right to access information concerning the claims against them and their defenses. *See, e.g.,* Federal Rules of Civil Procedure Rule 26.

But the right to discover that information is worthless if the information is destroyed before it can be obtained. Therefore, attorneys regularly send letters to people they believe may have discoverable information requesting that they preserve those records for discovery in the litigation, if necessary. Preservation letters are not a discovery device. In fact, attorneys regularly send preservation letters to people and entities long before any suit is filed and long before discovery begins. Preservation letters exist to put other people and entities on notice that a lawsuit may be filed or has been filed, not to request information or documents. Instead, production requests come during discovery and are governed by the rules of the particular court in which the lawsuit is filed.

Mr. Taffaro's memorandum recounts his good works, his sterling character, and the crippling damage undersigned counsel's preservation letters have allegedly done to his reputation. But this is simply not the case. The preservation letters are attached to his memorandum and speak for themselves. Each letter informs the addressee who undersigned counsel represents, requests that the addressee retain any records he may have concerning Mr. Taffaro, and simply states that the records may be needed and subject to subpoena in the future. The preservation letters contain no invective or "insidious innuendo." ECF document #61-1, p. 2. They merely present a professional, neutral request that the addressee maintain any records he has. The email from Jason Bonaventure attached to Mr. Taffaro's memorandum reflects the reaction everyone but Mr. Taffaro probably had upon reading the preservation letters; he advises everyone to make sure they retain their records and moves on with his life. It is hardly the scandal Mr. Taffaro tries to make it out to be.

Undersigned counsel and his clients have every right to request that parties to the lawsuit and third parties retain documents that may be relevant to the litigation. Undersigned counsel

violated neither the letter nor spirit of any order or law in sending out the letters. Further, his clients had no part in drafting or sending the preservation letters. Thus, Mr. Taffaro's suggestion that the Court sanction undersigned counsel and his clients for those actions is frivolous.

**V.     Even though a full-blown determination of the relevance of particular records and facts to this case is premature at this time, it is clear that the records referred to by the preservation letters are relevant and discoverable.**

Mr. Taffaro also spends a great deal of time arguing how each preservation letter is irrelevant or outside the appropriate scope of discovery. Those matters are generally the stuff of discovery conferences and protective orders, not gag orders. Because Mr. Taffaro has raised the issue of the letters' relevance, undersigned counsel will address his objections here out of an abundance of caution. In short, Mr. Taffaro has placed both his reputation and the likelihood of his continued employment at issue by making defamation and employment-related claims in his original and amended complaints. Each of the letters Mr. Taffaro complains of directly addresses one or both of these topics.

During his initial investigation, undersigned counsel heard reports that, during his tenure at Archbishop Hannan High School, Mr. Taffaro behaved inappropriately with one or more students or faculty members. Undersigned counsel plans on sending discovery requests to the school to attempt to ascertain the truth of those reports. Similarly, undersigned counsel has become aware of other reports regarding Mr. Taffaro's inappropriate behavior with girls housed by Straight Street, Inc., during his employment there. Undersigned counsel will seek records and other information concerning these reports as part of his defense of his clients. It also appears that Miami-Dade Police Department Police Athletic League, Inc., donated a substantial sum of money to Straight Street, Inc., while Mr. Taffaro was at its helm and that the money was not accounted

for. Undersigned counsel plans on sending discovery requests to the League in the future to determine whether it ever determined the disposition of its donation. Likewise, undersigned counsel has heard reports that T-Mac, Inc., performed work on then-Councilman Taffaro's personal property without charge after Hurricane Katrina. He plans to determine whether or not those reports are true through future discovery. Undersigned counsel has also learned of complaints made regarding improper demands allegedly made by Mr. Taffaro on St. Bernard Parish Drug Court clients during his employment there. And, finally, undersigned counsel asked the State Division of Administration to preserve its records because he plans to subpoena those records, as they document Mr. Taffaro's present employment, future employment prospects, and performance at his current job.

All of these matters are relevant to Mr. Taffaro's complaint, and each party who received a letter has (or had) documents that will be discoverable once discovery begins in this case. A great deal of Mr. Taffaro's complaint concerns his present and future employment prospects. The State Division of Administration has all of the information necessary to determine whether Mr. Taffaro's employment has been adversely affected by the defendants' alleged conduct. Further, the State has records of Mr. Taffaro's salary and benefits, all of which will help calculate any economic loss Mr. Taffaro may have suffered if his allegations are proven.

Mr. Taffaro has also spilled a great deal of ink describing his sterling reputation in the community and accusing the defendants of damaging it. Mr. Taffaro has put his reputation squarely at issue, and the defendants have a right to dispute his characterization of himself through discovery and other evidence. In short, undersigned counsel's investigation has led him to believe that Mr. Taffaro's reputation is not nearly as spotless as he makes it out to be. Archbishop Hannan High School may have records of any complaints made or disciplinary action

taken against Mr. Taffaro that corroborate the reports detailed above. The school may also have current contact information for any faculty and alumni who were involved. Similarly, Straight Street, Inc., and the St. Bernard Drug Court should have their own records of complaints and discipline. Finally, T-Mac should have records of work done for Mr. Taffaro while he was a part of Parish government and should be able to document whether he paid for that work or accepted it as a gift in contravention of state ethics laws. All of this information is relevant because it speaks to Mr. Taffaro's reputation in the community. Mr. Taffaro has accused the defendants of destroying his reputation; the defendants have a right to prove what Mr. Taffaro's actual reputation is.

### Conclusion

Defendants St. Bernard Parish, St. Bernard Parish Government, William M. McGoey, Clay Dillon, Craig DeHarde, and Donald Bourgeois urge this Court to deny Mr. Taffaro's motion and to award them a reasonable attorney's fee for responding to his frivolous motion. In essence, this is a motion for a protective order disguised as a gag order and has been filed before discovery has even begun. It appears that Mr. Taffaro hopes to have this Court bar the defendants from contacting third parties regarding this case, thereby preventing them from investigating Mr. Taffaro's claims and from defending themselves with facts.

Mr. Taffaro offers only cursory legal support for his gag order request. He only spends one half of one paragraph on the subject and supports his request with inapposite precedent. Instead, Mr. Taffaro spends the rest of his nine page memorandum trying to convince the Court to impose sanctions on undersigned counsel and his clients. There is no reason for this Court to issue a gag order or impose sanctions. There have been no problems concerning media attention to this case.

No court orders have been violated. There is no potential jury pool to taint. Mr. Taffaro's reputation cannot be harmed by discovery requests served on third parties. And, worst of all, the circumstances here do not satisfy any of the requirements for imposing a prior restraint on speech. Accordingly, Mr. Taffaro's motion for a gag order should be denied.

In addition to being legally baseless, Mr. Taffaro's veiled request for a protective order is frivolous because it is untimely—discovery has not even begun yet and is suspended in any case —and because it is unwarranted. Mr. Taffaro's reputation is at issue, and the defendants are entitled to discover information concerning it. Finally, Mr. Taffaro's request that this Court consider sanctions to undersigned counsel and his clients is also frivolous. The clients had no part whatsoever in sending out the preservation letters that offended Mr. Taffaro so deeply, and undersigned counsel did nothing wrong. The letters are professionally written and are a normal part of litigation practice. They are not, as Mr. Taffaro argues, impermissible "faux-discovery." Accordingly, undersigned counsel requests that his clients be awarded a reasonable attorney's fee for his having to respond to Mr. Taffaro's frivolous motion.

Respectfully submitted,

/s/ Gregory W. Rome

Sharon M. Williams (LSBA #13530)
<sharon@williamsandrome.com>
Gregory W. Rome (LSBA #32665), T.A.
<gwrome@williamsandrome.com>

**Williams & Rome, L.L.C.**
2413 Pakenham Drive
Chalmette, LA 70043
(504) 875-4397
(504) 875-4402 fax

*Attorneys for St. Bernard Parish Government, William M. McGoey, Clay Dillon, Craig DeHarde, and Donald Bourgeois*

### Certificate of Service

I hereby certify that in accordance with the Eastern District of Louisiana's electronic filing procedures, this document has been electronically filed. A Notice of Electronic Filing will be sent by the Court to all counsel of record who have consented to email notification and electronic service. This document is available for viewing and downloading from the Court's ECF system.

/s/ Gregory W. Rome

Gregory W. Rome