UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CRAIG P. TAFFARO, JR.                    CIVIL ACTION

v.                                       NO. 12-2720

DAVID E. PERALTA, ET AL.                 SECTION "F"

ORDER AND REASONS

Before the Court are five motions:  (1) David E. Peralta's motion to dismiss for failure to state a claim, motion to strike, and motion for more definite statement; (2) Donald Bourgeois, Craig DeHarde, Clay Dillon, and William M. McGoey's motion to dismiss for failure to state a claim; (3) Craig P. Taffaro, Jr.'s motion for gag order; (4) Donald Bourgeois, Craig DeHarde, Clay Dillon, and William M. McGoey's special motion to strike; and (5) St. Bernard Parish and St. Bernard Parish Government's motion to dismiss for failure to state a claim.  For the reasons that follow, the defendants' motions to dismiss are GRANTED; Donald Bourgeois, Craig DeHarde, Clay Dillon, and William M. McGoey and the Parish's special motion to strike is DENIED as moot; and the plaintiff's motion for gag order is DENIED.

## Background

This civil rights case arises out of a vendetta allegedly waged by David E. Peralta, the current St. Bernard Parish President, and perpetuated by other members of Parish government,

1

against the former president, Craig P. Taffaro, Jr., who insists that Mr. Peralta's campaign of retaliation against him culminated in "an unauthorized raid" on his storage unit in violation of his Fourth Amendment rights.

Craig Taffaro became President of St. Bernard Parish on January 8, 2008. At that time, David Peralta was Parish Chief Administrative Officer. But Taffaro dismissed Peralta as CAO for insubordination. This, Taffaro insists, was the impetus for Peralta's announcement that he would retaliate against Taffaro.

Taffaro's tenure as President ended in 2011, ironically, after he lost his reelection bid to Peralta. Taffaro resigned in December 2011 when he was appointed to be Director of the State Hazard Mitigation Grant Program and Recovery Coordination; a state government job he still has today.

Shortly after Peralta took office as Parish president in early January 2012, the U.S. Department of Justice filed a lawsuit against St. Bernard Parish, in which the DOJ complained that the Parish, on Taffaro's watch, violated the Fair Housing Act by discriminating against minorities seeking to rent residential property in the Parish. United States v. St. Bernard Parish, No. 12-321 (E.D. La.), Section C. The DOJ litigation was ongoing until recently, when the Court approved a settlement agreement and dismissed the case. See id. at Rec.Doc. 339. It was this litigation that put into motion the events giving rise to this

2

case.

In mid-October 2012 an attorney for the Parish, William McGoey,[1] communicated with Taffaro concerning outstanding discovery in the DOJ litigation. McGoey asked Taffaro to provide any records he had in his possession from his tenure as Parish President because the Parish needed to respond to requests for discovery.[2] Taffaro alleges that McGoey was communicating with him "in a privileged setting creating a confidentiality which he violated by providing false information that [was] used to obtain [a search] warrant." Taffaro does not say that he told McGoey that he was in possession of Parish government documents, but he does suggest that at some point he "offer[ed] to deliver anything that might be needed." Taffaro suggests that at some point that information (that he had government documents), along with the location of Taffaro's government documents (a storage facility in Chalmette) was conveyed by McGoey to Sergeant Gourgues.[3]

---

[1]William M. McGoey is an attorney employed by the parish in the Department of Legal Affairs as the legal counsel with the responsibility of advising the president.

[2]Taffaro alleges that McGoey's communication with Taffaro regarding outstanding discovery in the DOJ litigation "was a set-up for Peralta's premeditated and unauthorized raid on Taffaro's storage unit."

[3]Jarrod Gourgues is a sergeant with the St. Bernard Parish Sheriff's Office; Taffaro alleges that he was "detailed to Peralta" and was known has his bodyguard.

On October 22, 2012 Sgt. Gourgues and Clay Dillon[4] went to a storage facility in Chalmette (Super Self Storage) and spoke to the day manager, Carrie Lulu. Not only did Ms. Lulu identify Taffaro's locked storage unit, but she also volunteered that she was storing three boxes in her own storage unit that belonged to Taffaro "from a previous Taffaro move." Gourgues and Dillon searched those three boxes and took them to Peralta's office at the government complex. The next day, on October 23, 2012, Sgt. Gourgues applied to a state court judge in the 34th Judicial District Court for the Parish of St. Bernard for a search warrant for Taffaro's storage unit in Chalmette to seize Parish government records. In the search warrant application,[5] the purpose of seizing the property (described as "St. Bernard Parish Government records") was explained to be "relative to an ongoing investigation involving a violation of Louisiana RS 14:132 (injuring public records) involving a former Parish President." According to the application for the search warrant, during a telephone call between McGoey and Taffaro on October 18, 2012, Taffaro was informed that "the judge was demanding files", and Sgt. Gourgues' request for warrant

─────────────────────

[4]Clay Dillon is the Director and Chief Compliance Inspector of the Department of Resident Services and Compliance. Taffaro alleges that Dillon "expressed an animus toward Taffaro for not promoting him to the position that he was given in the Peralta administration."

[5]The application for the search warrant is one of several documents attached to Taffaro's complaint.

4

states, "Taffaro admitted that he had removed [government] files from the government building [and another government employee] Steve Lerouge...informed [Gourgues] that per Mr. Taffaro's instructions he was to remove the file boxes from the president's office and store them in a private unit located at [Chalmette Super Self Storage]."   And there were added "reasons and facts" supporting the request for the search warrant:

> Upon further investigation by myself, I spoke with [Parish] employee, Steve Lerouge, and he informed me that per Mr. Taffaro's instructions he was to remove the file boxes from the president's office and store them in a private unit located at [Chalmette Super Self Storage].  Mr. Lerouge stated he then proceeded with the task of moving approximately 20 misc. boxes of government property from the president's office to Chalmette Super Self Storage....
> On October 22nd, 2012, Clay Dillon (SBPG) employee met with Ms. Carrie Lulu (manager of Chalmette Super Self Storage) regarding the...location of unaccounted for [government] files....  Ms. Lulu advised Dillon that Mr. Taffaro vacated...one [of two] storage unit[s], he left behind...boxes [that Taffaro said he would retrieve but had yet to do so].  Dillon asked Ms. Lulu if he could view the items at issue in order to determine if any of those items were SBPG property.  Dillon observed [Parish records in the boxes possessed by Ms. Lulu].

Taffaro alleges that the search warrant was procured fraudulently and the execution of the warrant violated his Fourth Amendment rights.

    According to Taffaro, the stated purpose of assisting the United States in the DOJ litigation and ensuring that Magistrate Judge Shushan's order compelling discovery was obeyed was simply a pretext to raid Taffaro's storage unit.   Nonetheless, Gourgues

executed the search warrant later that same day.[6]  Gourgues, along
with other St. Bernard Parish employees Dillon, Craig DeHarde,[7] and
Donald Bourgeois, Jr.[8] arrived at the storage unit, at which time
Dillon cut the lock on Taffaro's storage unit and all participants
executed "the raid", taking 19 boxes of documents back to the St.
Bernard Parish Government complex.  The raid was apparently filmed
by one of the participants and, later, according to Taffaro's
complaint, the video (and emails alleging circumstances about the
documents in the storage unit) were disseminated to media outlets,
the internet, and to Taffaro's employer, the State of Louisiana.[9]

On November 8, 2012 Craig Taffaro sued Peralta, McGoey,
Gourgues, Dillon, DeHarde, Bourgeois, and the fictitious
policeofficer123@ymail.com, asserting civil rights violations under
42 U.S.C. §§ 1983 and 1988; conspiracy to violate civil rights

---

[6]At some unspecified time, Taffaro says that Peralta
called St. Bernard Parish Sheriff James Pohlmann to tell him that
he and Gourgues "executed a warrant on Taffaro's storage unit."
According to Taffaro, the Sheriff was surprised that Gourgues was
involved in executing the warrant.

[7]Craig DeHarde is the Director of the Department of
Recreation, Culture, and Tourism for St. Bernard Parish.

[8]Donald R. Bourgeois, Jr. is the Director of the
Department of Recovery.

[9]One email in particular was sent by the email address
policeofficer123@ymail.com.  Taffaro believes that Bourgeois is the
anonymous policeofficer123@ymail.com, and that the person using
this anonymous email address has slandered Taffaro by sending, on
October 24, 2012, to the print and broadcast media and to Taffaro's
employer, an anonymous email with the subject line "Craig Taffaro
Allegedly Commits Felony Theft".

under § 1985; and various state law claims, including wrongful interference with Taffaro's career rights, intentional infliction of emotional distress, abuse of rights, and abuse of process.[10] Taffaro seeks $750,000 in damages, as well as attorney's fees, costs, and $2,000,000 in punitive damages. On January 19, 2013 Taffaro filed an amended complaint, adding St. Bernard Parish Government (and St. Bernard Parish) as a defendant. On February 20, 2013 Taffaro voluntarily dismissed his claim pursuant to 42 U.S.C. § 1985 for conspiracy to violate civil rights.

Five motions are now pending: Peralta seeks dismissal of the claims asserted against him; defendants McGoey, Dillon, DeHarde, Bourgeois, and the St. Bernard Parish Government seek dismissal of the claims asserted against them and also seek to strike certain claims under La. Code of Civ. P. art. 971. Taffaro requests that the Court issue a gag order.

---

[10] According to Taffaro: "The '...ongoing investigation regarding violation of La.R.S. 14:132 (injuring public records)...' was a ruse used by Peralta in concert with McGoey, Gourgues, Dillon, DeHarde, Bourgeois, and the fictitious policeofficer123@ymail.com to slander Taffaro and ruin his career as a public servant."

There are also many extraneous facts alleged in the complaint. For example, Taffaro alleges that when Peralta began his tenure as Parish President, on January 10, 2012, Peralta instructed I.T. Director James Murray to "enable" Taffaro's email account and provide Peralta a new password. Even though Murray complied, he was fired seven days later. Taffaro also alleges that Peralta "engaged in a pattern of confronting employees" by suggesting that he knew they supported Taffaro and that Peralta "often demot[ed] or fir[ed] the employee questioned, including the outright firing of Afro-Americans La Koshia Roberts, James Murray and Tyrone Ben."

I.

A.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed.R.Civ.P. 8).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  Kaiser, 677 F.2d at 1050.  Indeed, the Court must first identify allegations that

are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations." Id. at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short

9

of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal quotations omitted) (citing Twombly, 550 U.S. at 557).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011)(quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

*B.*

Rule 9(b) of the Federal Rules of Civil Procedure imposes a "heightened pleading standard", and provides that when alleging fraud "a party must state with particularity the circumstances constituting fraud or mistake...  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).  "Rule 9(b) is an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.'" U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185

(5th Cir. 2009).  "The particularity demanded by Rule 9(b)", the Fifth Circuit instructs, "is supplemental to the Supreme Court's...interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" Id. (citing Twombly, 550 U.S. at 570).

To satisfy Rule 9(b), a plaintiff must (1) specify the statements alleged to be fraudulent, (2) identify the speaker or author of the statements, (3) state when and where the statements were made, and (4) state why the statements were fraudulent. Hermann Holdings Ltd. v. Lucent Technologies, Inc., 302 F.3d 552, 564-65 (5th Cir. 2002)(citations omitted).  The Fifth Circuit commands that Rule 9(b) be interpreted strictly (id.), but instructs courts to be mindful that "Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading[;]  Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after Twombly must make relief plausible, not merely conceivable, when taken as true." Kanneganti, 565 F.3d at 185-86.  Finally, the Court must realistically observe that "Rule 9(b)'s ultimate meaning is context-specific, and thus there is no single construction of Rule 9(b) that applies in all contexts." Id. at 188.

II.
A.

Title 42, U.S.C. § 1983 creates a damages remedy for the

11

violation of federal constitutional or statutory rights under color of state law; it provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

To establish § 1983 liability, the plaintiff must satisfy three elements:

> (1)  deprivation of a right secured by the U.S. Constitution or federal law,
> (2)  that occurred under color of state law, and
> (3)  was caused by a state actor.

<u>Victoria W. v. Larpenter</u>, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

Taffaro alleges that he was twice deprived of his right to be free from unreasonable searches and seizures; he claims that the defendants, all government actors, took three boxes of documents he had left behind in a storage unit, without a warrant, and that they obtained a search warrant for his storage unit under the false pretense that it was sought relative to an ongoing investigation involving a violation of La.R.S. 14:132.

The Fourth Amendment to the U.S. Constitution protects against unreasonable government searches:

> The right of the people to be secure in their persons houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

12

describing the place to be searched, and the person or
things to be seized.

"The touchstone of Fourth Amendment analysis is whether a person
has a 'constitutionally protected reasonable expectation of
privacy.'" California v. Ciraolo, 476 U.S. 207, (1985)(quoting
Katz v. United States, 389 U.S. 347, 360 (1967)(Harlan, J.,
concurring)).  Whether an individual may seek refuge in the Fourth
Amendment "depends not upon a property right in the invaded place
but upon whether the person who claims the protection of the
[Fourth] Amendment has a legitimate expectation of privacy in the
invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1978).

Generally speaking, absent a warrant, consent, or particular
exigent circumstances, law enforcement officers act unreasonably
and, therefore, unconstitutionally, when they enter a private home
or otherwise conduct a search of an owner's property.  See Donovan
v. Dewey, 452 U.S. 594, 598-99 (1981)(citations omitted).  Given
the Supreme Court's acknowledgment respecting "the Fourth
Amendment's strong preference for searches conducted pursuant to a
warrant", courts are cautioned "not [to] invalidate ... warrant[s]
by interpreting affidavit[s] in a hypertechnical, rather than a
commonsense, manner." Illinois v. Gates, 462 U.S. 213, 236
(1983)(citation omitted)("Reflecting this preference for the
warrant process, the traditional standard for review of an issuing
magistrate's probable cause determination has been that so long as
the magistrate had a 'substantial basis for ... conclud[ing]" that

13

a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more").

*B.*

Taffaro charges that the defendants conspired to violate his Fourth Amendment rights when they seized three boxes of St. Bernard Parish Government documents, without a warrant, and, again, when they "rummaged" through his personal storage unit and seized 19 boxes of St. Bernard Parish Government documents based on a warrant that was obtained under the "false pretense" that he was injuring public records in violation of state law; he alleges that the subpoena power of the federal court in the DOJ litigation instead should have been used to obtain the documents.  By their motions to dismiss, defendants Peralta, McGoey, Dillon, Bourgeois, Deharde, and the St. Bernard Parish Government[11] challenge whether Taffaro plausibly has stated a Fourth Amendment violation: in particular, they first contend that the seizure of the three boxes in Ms. Lulu's possession was not unreasonable because those boxes had been abandoned by Taffaro; second, they contend that Taffaro has not alleged that the search of his storage unit was conducted pursuant to a facially invalid search warrant or that the state court judge lacked probable cause in issuing the warrant and that, therefore, the "raid" on his storage unit likewise passes constitutional

---

[11]The only defendant that has not requested dismissal based on Rule 12(b)(6) is Sgt. Gourgues.

muster.[12]

Taffaro counters that these determinations are too fact-intensive and must await summary judgment.  Taffaro's argument is tantamount to suggesting that, as a matter of law, because Fourth Amendment inquiries are generally context-specific and often require an examination of the totality of the circumstances, complaints alleging Fourth Amendment violations must withstand pleading challenges under Rule 12(b)(6).  The Court disagrees.  Taffaro ignores the "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" when examining the technical sufficiency of factual allegations against the flexible pleading standards.  Iqbal, 556 U.S. at 679.

1. Allegations of Unreasonable Seizure, or Abandonment?

Defendants McGoey, Dillon, DeHarde, Bourgeois, and the St. Bernard Parish Government contend that Taffaro has failed, as a matter of law, to state a Fourth Amendment violation with respect to the warrantless seizure of three boxes in Ms. Lulu's possession on October 22, 2012.[13]  They invoke the doctrine of abandonment.

"To demonstrate a legitimate expectation of privacy," the

---

[12]Notably, the defendants do not at this time invoke qualified immunity; they address only whether Taffaro has stated a constitutional violation.

[13]By his motion, Peralta contends that Taffaro has failed to allege any facts supporting his involvement in the alleged unlawful seizure "because he had none, nor was there any seizure."

Fifth Circuit has observed, "a plaintiff must show that []he has a subjective expectation of privacy in the premises searched and that h[is] expectation of privacy is one that society would recognize as objectively legitimate." <u>Blanchard v. Lonero</u>, 452 Fed.Appx. 577, 583 (5th Cir. Dec. 7, 2011)(unpublished)(citing <u>United States v. Riazco</u>, 91 F.3d 752, 754 (5th Cir. 1996)).  Significantly, and keeping true to the common sense approach to the Fourth Amendment, "[a]n individual...has no expectation of privacy over abandoned property." <u>See</u> <u>id.</u> (citing <u>United States v. Edwards</u>, 441 F.2d 749, 752 (5th Cir. 1971)("It is clear that this personal right to Fourth Amendment protection of property against search and seizure is lost when the property is abandoned.").  For Fourth Amendment purposes, an individual has abandoned property when he "voluntarily discard[s], [leaves behind], or otherwise relinquishe[s] his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." <u>See</u> <u>id.</u> (quoting <u>United States v. Colbert</u>, 474 F.2d 174, 176 (5th Cir. 1973)(en banc)).

With respect to the claim of warrantless seizure of three boxes on October 22, 2012, Taffaro alleges:

> Dillon was listed by Gourgues as having initially gone to the storage facility on October 22, 2012, with Gourgues, where the two interrogated Carrie Lulu, the day manager; during the interrogation, Lulu was requested to identify Taffaro's locked storage unit, which she did; when Lulu volunteered that she was storing three boxes in her unit from a previous Taffaro move, Dillon and Gourgues searched those three

boxes and then transported the three boxes to the
offices of Peralta and Gourgues at the government
complex; the initial seizure of the 3 boxes left in
Mrs. Lulu's unit constituted an invalid warrantless
search and seizure...; on prior occasions, Dillon
expressed an animus toward Taffaro for not promoting
him to the position that he was given in the Peralta
administration.[14]

The defendants contend that Taffaro's allegations fall short
of making out a plausible Fourth Amendment violation based on the
warrantless October 22, 2012 seizure of the three boxes in Ms.
Lulu's possession.  The Court agrees.

----

[14]The Court notes that Taffaro attaches to his complaint
the application for the search warrant that was obtained on October
23, 2012, the day after Gourgues and Dillon are alleged to have
first gone to the storage facility; in support of his request for
a search warrant, Gourgues stated under oath:

> On October 22nd, 2012, Clay Dillon (SBPG)
> employee met with Ms. Carrie Lulu (manager of
> Chalmette Super Self Storage) regarding the
> disposition/location of unaccounted fro SBPG
> files.  Dillon advised Ms. Lulu that he
> believes those files might be located in one
> of two storage units leased by former Parish
> President Craig Taffaro.  Ms. Lulu advised
> Dillon that Mr. Taffaro no longer leases both
> units.  She further advised that when Mr.
> Taffaro vacated the one unit, he left behind a
> number of boxes.  Ms. Lulu stated to Dillon
> that she contacted Mr. Taffaro and asked him
> if he wished to retrieve those items left
> behind.  Mr. Taffaro stated that he would
> retrieve those items.  Ms. Lulu then advised
> Dillon that Mr. Taffaro has not since
> retrieved those items.  Dillon then asked Ms.
> Lulu if he could view the items at issue in
> order to determine if any of those items were
> SBPG property.  Dillon observed, in multiple
> boxes, time sheets for current and former SBPG
> employees as well as document relative to the
> "Redfish-cup" tournament.

The Court again notes that Taffaro fails to meaningfully oppose the defendants' Rule 12(b)(6) motions, dismissively characterizing the motions as "fact-intensive...summary judgment motions in disguise", when he would be better-served by submitting a substantive response to the legal arguments advanced by the defendants.[15]  But the Court need only resort to the allegations of Taffaro's complaint to determine that he has failed to state a constitutional violation with respect to the October 22 seizure of the three boxes.  Taffaro advances no argument to support how he might have a legitimate expectation of privacy that would protect documents in boxes that he, in his own words in his complaint, "left in Ms. Lulu's [storage] unit."[16]  The plausibility of his own conclusory allegations that this seizure "constituted an invalid warrantless search and seizure" is betrayed by his own factual allegations.  Thus, as a matter of law, Taffaro has failed to state a § 1983 claim based on a Fourth Amendment violation arising from the October 22 "seizure"; this claim is dismissed.[17]

_____

[15]The Court will not indulge counsel's gratuitous commentary and characterizations of their opponents and, again, urges the parties to focus on the legal issues presented for resolution.

[16]Likewise, Taffaro nowhere alleges that Ms. Lulu failed to consent to the search and seizure of the 3 boxes in her possession, or that she could not have done so.

[17]In his request for dismissal, Peralta contends that Taffaro's allegations do not implicate him in the warrantless seizure, except for conclusory allegations and suggestions concerning Peralta's promise to retaliate against him and other

2.  Allegations of Fraudulently Obtained Warrant?

Defendants McGoey, Dillon, DeHarde, Bourgeois, and the St. Bernard Parish Government next contend that Taffaro has failed, as a matter of law, to state a Fourth Amendment violation as to them with respect to the search and seizure -- "the raid" -- conducted on October 23, 2012 pursuant to a warrant issued by a state court judge.  And Peralta, again, contends that Taffaro fails to assert factual allegations connecting him to the alleged unconstitutional search and seizure.[18]

---

allegations suggesting that Gourgues "was Peralta's highest ranking aide-de-camp...personal driver and his bodyguard."  These allegations, Peralta contends, are insufficient to allege personal involvement by Peralta in the October 22 seizure.  The Court agrees.  Except for his position as president and generic allegations suggestive of his vendetta against Taffaro, no facts link Peralta to the warrantless October 22 search and seizure in Ms. Lulu's possession.  This can also be said for the other defendants not alleged to be directly involved in the search and seizure of the three boxes (all defendants except Gourgues and Dillon).  Because the Court has determined, as a matter of law, that Taffaro fails to state a constitutional violation resulting from the October 22 incident, the Court need not scour the allegations of the complaint or its attachments in an attempt to parse each allegation against each defendant concerning the constitutionality of the October 22 incident.  Because Taffaro pleads facts consistent only with abandonment of the three boxes, his expectation of privacy with respect to those boxes was diminished; he fails to state a claim for a Fourth Amendment violation against the movants, including Perlta, McGoey, Dillon, DeHarde, Bourgeois, and St. Bernard Parish Government.

[18]Specifically addressing Peralta's contention that Taffaro has failed to allege sufficient facts linking him to a Fourth Amendment violation, the Court agrees.  Taffaro alleges that Peralta was determined to retaliate against Taffaro and that he did so by orchestrating "the raid" on his storage unit.  But actual factual allegations supporting Taffaro's conclusion are lacking. Taffaro simply asserts allegations that are suggestive of

Taffaro responds to these requests for dismissal by briefing the Court on the law of qualified immunity, which has not yet even been raised by defendants, and by referring the Court to the video of the "raid", which he says reveals:

> *THE ULTIMATE TIE-BREAKER IN ANY GIVEN ARGUMENT IS IMPOSSIBLE TO RESIST:  A SIMPLE SUBPOENA FROM THE DOJ LITIGATION TO TAFFARO OR TO THE STORAGE COMPANY WOULD HAVE AVOIDED THE REPUTATION-CARNAGE PRESENTLY BEFORE THE COURT.*

(emphasis in original).  He also notes in his opposition papers that:

> Taffaro left office in December 2011.  All defendants knew or should have known that he packed some files and stored them at the subject storage unit. *A SUBPOENA IN THE DOJ LITIGATION WOULD HAVE SUFFICED.*

(emphasis in original).  And, again, he suggests "[w]e verily believe the defense motions are fact-intensive and that the Court should so declare."[19]  To the extent that the defendants's factual presentations include facts not alleged by Taffaro in his complaint

_____

retaliatory motive, or are otherwise suggestive that Peralta masterminded the raid (by alleging that Gourgoues was Peralta's "aide-de-camp" and "bodyguard").  But even if Taffaro had plausibly alleged a constitutional violation, he failed to allege facts that, if proved, would support a finding that Peralta caused a constitutional deprivation.

[19]He continues:

We admit that we were anxious to bring an end to calumny ill-deserved by a good man who has devoted his professional life to helping those who needed help and guiding those who needed guidance.  The conduct of the defendants requires the most severe of sanctions and the harshest of punitive damages allowed by law.

(or in the materials he attaches to his complaint), the Court disregards those assertions. But, contrary to Taffaro's insistence that the defendants' contentions are best resolved in the context of summary judgment motion practice, the defendants are entitled to challenge the technical sufficiency of Taffaro's complaint. And so the Court turns to the allegations of Taffaro's complaint, this time concerning the October 23, 2012 search of his storage unit:

> [T]he obtaining of a search warrant under the false pretense that it was sought "...relative to an ongoing investigation involving violation (sic) of Louisiana R.S. 14:132 (injuring public records)..." impaired Taffaro's constitutional rights pursuant to the Fourth Amendment to the United States Constitution.... [T]he raid conducted on October 23, 2012...was the culmination of a pattern of retaliation by Peralta against Taffaro because Taffaro fired Peralta as CAO in October, 2008,...and because Taffaro campaigned against Peralta in 2011, both of which were activities constitutionally protected by the First Amendment to the United States Constitution...
>
> McGoey communicated with Taffaro in connection with discovery in the DOJ litigation, and was doing so in a privileged setting creating a confidentiality which he violated by providing false information that Gourgues used to obtain the warrant and to implicate Taffaro.... [According to materials attached to the complaint, Gourgues stated in a narrative in connection with his investigation that McGoey told him that Taffaro said he was in possession of government documents that were needed in pending cases. Gourgues stated that McGoey also said that Taffaro told him during a telephone call that he did indeed have original government documents in his possession and had no intent on returning them.][20]

---

[20]To the extent that the materials attached to the complaint contradict factual allegations in the complaint, the Court does not resolve the dispute but, instead, considers the allegations of the complaint to be true.

McGoey knew...that the false information he passed on
to Gourgues, if it were true, required McGoey to
inform DOJ and the court of his discovery; because
McGoey went to Gourgues and not DOJ or the court, he
breached his duty to provide information in the DOJ
litigation on a continuing basis; McGoey also violated
the Rules of Professional Conduct...by failing to
communicate [and] concealing from the federal court
the facts he allegedly discovered.... On October 20,
2012, McGoey sent Taffaro a deceptively-worded letter
dated October 19, 2012 on...Peralta Parish President
letterhead falsely indicating that "...the Parish has
been served with a request for production of documents
which includes a request for communications from you
to various parties..." [I]n truth and in fact
Magistrate-Judge Shushan's...Order in the DOJ
litigation said nothing of the sort, granting the DOJ
motion to compel discovery...on July 12, 2012.
Notwithstanding that October 19, 2012 was the court-
imposed deadline...McGoey's deceptive letter was sent
to Taffaro by the two slowest means of communication
[and] was not seen by Taffaro until he arrived at his
residence on 5:00 p.m., Monday, October 22, 2012,
after which time, Taffaro made multiple phone calls to
McGoey with the intent to fulfill his offer to deliver
anything that might be needed; none of the calls made
October 22 were returned; in truth and in fact,
McGoey's letter had nothing to do with Magistrate-
Judge Shushan's Order and was a set-up for Peralta's
premeditated and unauthorized raid on Taffaro's
storage unit, consistent with Peralta's retaliatory
modus operandi since Taffaro fired him in October of
2008....

Jarrod Gourgues is a sergeant with the St. Bernard
Parish Sheriff's office [who] was "detailed" to
Peralta, meaning that he was Peralta's highest ranking
aide-de-camp.... Gourgues, who orchestrated the
October 23 raid with Peralta, occupied an adjacent
office to Peralta.... Gourgues' activities were not
authorized by Sheriff James Pohlmann nor known to have
occurred until Peralta called Pohlmann [after the
raid].

...Dillon was the one who cut the lock to Taffaro's
unit on October 23, 2012 [and] Bourgeois...played a
key role in the October 23, 2012 raid [and] also
engaged in Peralta's pattern of systematic retaliation

and aided and abetted Peralta's slander campaign....
[T]he entire posse amassed on October 22 and 23, 2012
was made up of a large[] and highly unlikely group of
officials pretending to assist the United States in
the DOJ litigation and professing to make sure that
Magistrate-Judge Shushan's orders were obeyed, stating
to the St. Bernard Judge who signed the warrant that
"...the Judge [is] demanding files..."[:] (i) a parish
president who himself fed the fires of racial
discrimination (Peralta), (ii) a parish lawyer in a
department replete with nepotism (McGoey), (iii) a
bodyguard loaned by the sheriff to the president who
didn't tell the sheriff what was happening (Gourgues),
(iv) the director of the parish complaint office
(Dillon), (v) an ill-qualified recreation director
from a department that dealt with culture and tourism
(DeHarde), and (vi) a maverick FEMA money-handler who
goes by the moniker   policeofficer123@ymail.com
(Bourgeois); all perpetrators involved in the raid
were engaging in a pretext search and
seizure...justified by a phantom investigation having
nothing to do with the DOJ litigation....

Taffaro suggests that McGoey provided false or fraudulent
information to Gourgues, who used that information (along with
information learned from others during his investigation) to apply
for a warrant, which was issued by the state court judge.  Taffaro
further alleges that Gourgues, Dillon, DeHarde, and Bourgeois
personally participated in the "raid" on his storage unit.  And, he
concludes broadly that the raid was the manifestation of Peralta's
retaliatory animus toward Taffaro.  In short, Taffaro alleges that
the defendants conducted a sham investigation and recovered Parish
records in his storage unit under the pretext of investigating
Taffaro's violation of state law (injuring public records), in

order to fulfill Peralta's dislike of Taffaro.[21]  And, even though
a search warrant was obtained prior to "the raid", Taffaro alleges
in nothing more than conclusory fashion that the search warrant was
obtained under "false pretenses" and "fraud perpetrated by McGoey."
It is unclear what defect Taffaro is alleging with respect to the
warrant; he focuses instead on the subjective intent of the various
members of St. Bernard Parish Government, including those whom he
alleges participated in the execution of the warrant.[22]

"[A] material misrepresentation or omission from a warrant
affidavit can give rise to a § 1983 claim for money damages."
Dickey v. Huddleston, 14 F.3d 52, 1993 WL 560275, at *2 (5th Cir.

---

[21]Louisiana Revised Statute 14:132(B) provides that
"injuring public records" involves "the intentional removal,
mutilation, destruction, alteration, falsification, or concealment
of any record, document, or other thing, defined as a public record
pursuant to R.S. 44:1 et seq. and required to be preserved in any
public office or by any person or public officer pursuant to R.S.
44:36."

[22]Specifically addressing Taffaro's allegations that the
mere presence or participation in "the raid" by Parish Government
employees Dillon, Bourgeois, and DeHarde, along with their ill will
toward Taffaro, supports a finding that they contributed to his
Fourth Amendment injury, the Court finds that Taffaro has failed to
allege sufficient facts that would link them to a constitutional
deprivation.  "[T]he pleading standard Rule 8 announces does not
require 'detailed factual allegations,' but it demands more than an
unadorned,the-defendant-unlawfully-harmed-me accusation." Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009)(citing Fed.R.Civ.P. 8) (citing
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   As the
Supreme Court has observed, "[w]here the police enter a home under
the authority of a warrant to search for stolen property, the
presence of third parties for the purpose of identifying the stolen
property has long been approved by this Court and our common-law
tradition."  Wilson v. Layne, 526 U.S. 603, 611-12 (1999)(citation
omitted).

1993)(unpublished).  It is well-settled that:

> To be constitutionally valid, a search warrant must be based on probable cause.  The execution of a search warrant that is not supported by probable cause, therefore, violates the Constitution.  In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court considered the circumstances under which a defendant in a criminal proceeding could challenge the veracity of an affidavit used by the police to obtain an otherwise valid search warrant.  The Court held that a criminal defendant could challenge the truthfulness of a warrant affidavit and that the fruits of the resulting search could be suppressed if the defendant could show that the affidavit contained statements that were untrue and necessary to the magistrate's finding of probable cause....

<u>Id.</u>  The Fifth Circuit also noted:

> Whether there is probable cause for the issuance of a search warrant depends on whether "'the magistrate was provided with sufficient reliable information from which he could reasonably conclude that the items sought in the warrant were probably at the location sought to be searched.'" <u>United States v. Wake</u>, 948 F.2d 1422, 1428 (5th Cir. 1991)(citation omitted). In the determination of probable cause, the magistrate "may draw reasonable inferences from the material he receives, and his ultimate probable cause determination should be paid great deference by reviewing courts." <u>United States v. May</u>, 819 F.2d 531, 535 (5th Cir. 1987).  The magistrate must
>
>> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause

25

> existed.  <u>Illinois v. Gates</u>, 462
> U.S. 213, 238-39 (1983)(citation
> omitted).

<u>Id.</u> at *2 n.1.

These well-settled principles concerning the constitutional validity of search warrants are outlined above to advance the task of determining whether Taffaro adequately has stated a constitutional violation with respect to the October 23, 2012 search of his storage unit and seizure of boxes containing Parish records.  The task is complicated somewhat by Taffaro's inconsistent and contradictory factual allegations, and his failure to identify the alleged defect in the warrant obtained by Sgt. Gourgues,[23] as well as all counsel's inadequate briefing of the relevant law.

_____

[23]Taffaro suggests that <u>United States v. Leon</u>, 468 U.S. 897 (1984) is on point in establishing that the warrant and its execution fail to meet the objectively reasonable test because Gourgues is not a detective and "[t]he test is not whether [the state court judge] issued an illegal warrant, but whether a reasonably well-trained official would have known that his affidavit failed to establish probable cause and/or that he should not have applied for a warrant in the first place."  The Supreme Court helpfully instructs in <u>Leon</u> that "great deference" is accorded to a magistrate judge's determination of probable cause, but cautions that courts should not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'"  <u>Id.</u> at 914-15.  But an analysis of <u>Leon</u> at this stage, in which the Court simply addresses the defendants' challenge to the sufficiency of Taffaro's allegations concerning his alleged Fourth Amendment violation, is not necessary.  Indeed, Gourgues does not presently request any relief from this Court, and Taffaro fails to suggest how <u>Leon</u> should be applied to the defendants' challenge to the sufficiency of his allegations against them.

Taffaro seems to suggest in his complaint that McGoey lied when he told Gourgues that Taffaro told him (McGoey) that he (Taffaro) had government documents in his possession that he refused to return.  However, even assuming that these factual allegations are sufficiently well-pled to be deemed true at this stage of the litigation, these factual allegations are contradicted by other allegations of the complaint in which (a) Taffaro alleges that, after he received McGoey's letter,[24] "Taffaro made multiple phone calls to McGoey with the intent to fulfill his offer to deliver anything that might be needed", thus admitting that he "might" indeed have Parish records; and (b) Taffaro alleges that McGoey violated his professional responsibilities when he failed to inform the Court handling the DOJ litigation that Taffaro had in his possession Parish government documents.[25]   These allegations

---

[24]This is the October 19, 2012 letter attached to the complaint that McGoey sent to Taffaro on Peralta Parish Government letterhead, in which McGoey states "In my last conversation with you, you indicated to me that you have copies of some documents generated during your administration..." and further states "[I]t is essential that the Parish recovery any and all Parish documents in your possession...so that we can honor our duty to the Court...I cannot represent to the Court that we have produced all documents, if I have reason to believe that there may be documents that I have not produced."

[25]More confusing, Taffaro admits in his opposition papers that "All defendants knew or should have known that [Taffaro] packed some files and stored them at the subject storage unit."  In an attempt to reconcile Taffaro's internally inconsistent factual allegations, and viewing these allegations in the light most favorable to Taffaro, it seems that Taffaro is alleging that McGoey told Gourgues that Taffaro had in his storage unit Parish government documents and that the Parish needed to recover those

fail the requirements of Rule 8, and Rule 9(b), which applies to the extent Taffaro alleges fraud.[26]

Taffaro's confused claims simply highlight his failure to identify the alleged defect in the warrant: in fact, Taffaro nowhere alleges, in a conclusory fashion or otherwise, that the warrant issued by the state court judge was invalid or not based on probable cause.[27] For Taffaro to recover against any of Peralta,

---

documents but that McGoey lied to the extent that he told Gourgues that Taffaro refused to turn over the Parish records in his possession. Even though Taffaro had ample opportunity to present to the Court any argument he might have that would support his constitutional theory as advanced against the defendants, he has failed to do so. Even if McGoey conveyed false or incomplete information to Gourgues, there is no allegation in the complaint suggesting that McGoey's misinformation, standing alone, undermined the probable cause finding by the state court judge.

[26]Peralta contends that Taffaro's allegations that the warrant was obtained under false pretenses, or by "fraud", must be specifically pleaded under Rule 9(b).

[27]Based on the complaint and materials filed by Taffaro along with the complaint: Taffaro had Parish government documents in his storage unit; the Parish was required to produce Parish government records in the DOJ litigation; the Parish lawyer contacted Taffaro about producing documents he had in his possession; before giving Taffaro a chance to voluntarily produce the documents, the Parish lawyer told a Parish police officer that Taffaro had public records in his possession; a police officer investigated whether public records had been "injured" by talking to others with knowledge of the whereabouts of the Parish records; according to the warrant application, another government employee corroborated the Parish lawyer's suggestion that Taffaro was in possession of Parish records; a Parish police officer obtained a warrant from a state court judge based on swearing to the information he learned while investigating Taffaro's possession of Parish records. Taffaro simply does not allege facts that, if proven, would establish that probable cause was lacking.

McGoey, Dillon, DeHarde, Bourgeouis, or the St. Bernard Parish Government, he must allege facts that, if proven, establish that the warrant obtained to search the storage unit was not supported by probable cause and, thus, constitutionally invalid.  There are no well-pleaded facts supportive of this finding.

Taffaro leans heavily, indeed almost exclusively, on his allegations of malicious conduct by the defendants and the need for the defendants to be punished.[28]  But the Fourth Amendment's focus on objective factors and reasonableness undermine his reliance on the defendants' alleged retaliatory political intrigue.  Taffaro invokes the Supreme Court's observation in <u>Whren v. United States</u>, 517 U.S. 806, 811 (1996) that "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence."  But Taffaro's reliance on <u>Whren</u> and the focus in his complaint on the defendants' subjective motives is misplaced.[29]  In fact, when the petitioner, Whren, characterized the Supreme Court's prior precedent as endorsing the proposition that the Court

---

[28]Taffaro does not allege facts that challenge the objective validity of the warrant, nor does he allege that probable cause supporting the injury of public records was absent; he simply suggests and concludes that any suggestion that the Parish wanted its records back to produce in the DOJ litigation was a pretext and, even if it was not a pretext, then the records should have been recovered by resort to the subpoena power of the federal court, and not by a warrant issued by a state judge.

[29]Nor should there be any confusion that the October 23 search, which even Taffaro alleges was made pursuant to a warrant, was simply an "inventory search."

disapproves of police attempts to use valid bases of action against citizens as pretexts for pursuing other investigatory agendas, the Supreme Court rejected that characterization of its precedent.[30] To the contrary, the Supreme Court confirmed that it has "been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers", observing:

> only an undiscerning reader would regard these cases as endorsing the principle that ulterior motives can invalidate police conduct that is justifiable on the basis of probable cause to believe that a violation of law has occurred.  In each case we were addressing the validity of a search conducted in the absence of probable cause.  Our quoted statements simply explain that the exemption from the need for probable cause (and warrant), which is accorded to searches made for the purpose of inventory or administrative regulation, is not accorded to searches that are not made for those purposes.

Id. at 811.

Thus, Whren makes clear that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."

---

[30]In Whren, the Supreme Court was adamant in rejecting the petitioner's proposal that the test for traffic stops should be, not whether probable cause existed to justify the stop but, instead, whether a police officer, acting reasonably, would have made the stop for the reason given.  The argument advanced by petitioner was that, because police officers could invariably have probable cause to stop any given motorist for any number of traffic violations, and that officers might use a technical violation as a pretext for stopping a motorist for some impermissible reason (whether it be based on race of the car's occupants or as a means of investigating other law violations for which no probable cause exists).  The Supreme Court was not persuaded.  "Not only have we never held, outside the context of inventory search or administrative inspection...that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary."  Id. at 812.

Id. at 813; see also Kentucky v. King, 131 S.Ct. 1849, 1859
(2011)("Our cases have repeatedly rejected a subjective approach,
asking only whether "the circumstances, viewed objectively,
justifies the action.")(quotation omitted).  Here, the facts that
Taffaro alleges to support his Fourth Amendment claim based on the
October 23 raid focus on the defendants' subjective motives.  But
even assuming that Taffaro can prove dark ulterior motives, it does
not follow that these motives invalidate conduct that is otherwise
objectively justifiable (on the basis of probable cause to believe
that a violation of law, injuring public records, has occurred).[31]
A search based on a warrant supported by probable cause comports
with the Fourth Amendment even if the state actors involved in
procuring and executing the warrant were intense political rivals.
Thus, Taffaro's focus on suspected subjective intent, to the
exclusion of alleging facts that, if proven, would establish that
there was no probable cause supporting the warrant to search and

---

[31]Taffaro admits in his complaint that he had in his
personal storage unit Parish records, but he charges that an
investigation into any state court charge of "injuring public
records" should not have been initiated; instead, Taffaro suggests
that if the documents he possessed were in fact required by the DOJ
litigation, the better procedure would have been a subpoena.  This
suggestion coupled with numerous allegations suggesting that
Peralta and the other Parish government defendants disliked him and
had it out for him falls short of stating a claim that his
constitutional right to be free from unreasonable search and
seizure was violated.  Even assuming that each of the defendants
acted with ill will toward Taffaro, Taffaro's allegations fall
short of plausibly alleging that the probable cause found by the
state court judge that issued the search warrant was wholly absent.

seize Parish government records, is fatal to his attempt to state a constitutional violation sufficient to support a § 1983 claim.[32]

III.

The defendants also request dismissal of the plaintiff's state law claims on the ground that he has failed to state a claim upon which relief may be granted.  Although the Court dismisses the claims against movants over which the Court has original jurisdiction, the Court does not decline to exercise its supplemental jurisdiction over these state law claims because federal civil rights claims remain pending against the one defendant who did not join in these defendants' motions, Sgt. Gourgues.  Accordingly, the Court considers the sufficiency of the plaintiff's state court claims against Peralta, McGoey, Dillon, Bourgeois, DeHarde, and St. Bernard Parish Government.

A.

Taffaro alleges that the defendants wrongfully interfered with his career rights "[b]y virtue of false, defamatory and

---

[32]Again, because the Court has determined that Taffaro has failed to sufficiently allege a Fourth Amendment violation that would support his § 1983 claim against the moving defendants, it need not parse the complaint for the allegations concerning each individual or the Parish Government.  For example, the Court need not resolve the parties' dispute regarding whether or not the plaintiff has stated a claim for single-incident liability against the Parish Government because stating a constitutional violation is a necessary predicate to any municipal liability claim.  See City of St. Louis v. Prarprotnik, 485 U.S. 112, 137-38 (1988)(noting that "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for the deprivation of rights protected by the Constitution.").

calumnious communications to Taffaro's present employer"; he alleges that "the calumnious information disseminated by Peralta's systematic pattern of retaliation" has irreparably damaged his ability to advance in his state government position. The defendants counter that employment is not a protected right, and Taffaro has failed to allege facts to support each of the elements to maintain such a claim. The Court agrees. Taffaro does not allege that he is anything but an at-will employee of the state. "In Louisiana, '[a]bsent a specific contract or agreement establishing a fixed term of employment, an employer is at liberty to dismiss an employee at any time for any reason....'" Glover v. Smith, 478 Fed.Appx. 236, 240 (5th Cir. 2012)(quotation omitted). Moreover, Taffaro fails to allege that any of the defendants owed any duty toward Taffaro or his employment contract, which is fatal to his claim for interference with his career rights. See Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P., 689 F.3d 380, 394 (5th Cir. 2012)(citation omitted).

*B.*

Taffaro claims that the defendants are liable for still another intentional tort: intentional infliction of emotional distress. A plaintiff bringing this claim must allege:

> (1) that the conduct of the defendant was extreme and outrageous;
> (2) that the emotional distress suffered by the plaintiff was severe; and
> (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional

33

> distress would be certain or substantially certain to
> result from his conduct.

White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991).  In fact,
"[t]he conduct must be so outrageous in character, and so extreme
in degree, as to go beyond all possible bounds of decency, and to
be regarded as atrocious and utterly intolerable in a civilized
community."  Id.  (noting that "[l]iability does not extend to mere
insults, indignities, threats, annoyances, petty oppressions, or
other trivialities.  Persons must necessarily be expected to be
hardened to a certain amount of rough language, and to occasional
acts that are definitely inconsiderate and unkind.").

Taffaro has failed to state a claim.  He refers generally to
the "pattern of retaliation on the part of the defendants" but does
not identify what conduct he wishes to characterize as
"outrageous"; he refers to a "campaign of slander" but does not
identify what outrageous statements were made, who made them, or
that the defendants intended to or knew that severe emotional
distress would result.  He seems to succeed only in portraying an
unpleasant rivalry against the backdrop of local politics.

*C.*

Taffaro next alleges claims for "abuse of rights" and "abuse
of process".  The defendants ask the Court to take judicial notice
that: the documents recovered from Taffaro's storage unit were
subpoenaed by the Department of Justice; the documents have been
used in the DOJ litigation; and that Magistrate Judge Shushan

34

ordered the documents returned to the Parish after the parties scanned and exchanged them for discovery purposes.

1. Abuse of Rights

The Louisiana abuse of rights doctrine applies if one of the following conditions is met:

> (1) the rights were exercised exclusively for the purpose of harming another or with the predominant motive to cause harm;
> (2) an absence of a serious and legitimate interest that is worthy of judicial protection;
> (3) using the right in violation of moral rules, good faith or elementary fairness; or
> (4) exercising the right for a purpose other than for which it was granted.

Deus v. Allstate Ins. Co., 15 F.3d 506, 520 (5th Cir. 1994)(quotation omitted).

2. Abuse of Process

The essential elements of an abuse of process claim are "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not in the regular prosecution of the proceeding." Duboue v. City of New Orleans, 909 F.2d 129, 132 (5th Cir. 1990)(citations omitted).

As pled, Taffaro's abuse of rights and abuse of process claims lack facial plausibility; he simply has failed to plead sufficient factual content that allows the Court to draw the reasonable inference that the defendants are collectively liable for abuse of rights and abuse of process. See Iqbal, 556 U.S. at 678. Taffaro must provide "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." See Twombly, 550 U.S. at 555. And, when numerous defendants are collectively implicated in alleged misconduct, the "short and plain statement of the claim showing that the pleader is entitled to relief" must at least implicate discrete defendants in specific conduct. If Taffaro in good faith believes that he can cure this pleading defect on these claims, leave will be granted to do so, as long as they are dealt with professionally, restrained, to the point, and without the false drama of emotional hype.

*D.*

The Court notes that Taffaro does not allege, by a separate count in his complaint, a claim for defamation or slander. But he weaves throughout his complaint that there was "a campaign of slander" and that the defendants defamed him. To the extent Taffaro intended to state a separate claim for defamation, any such claim is dismissed for failure to state a claim. He, again, alleges nothing more than conclusions, has not alleged that the defendants published knowingly false statements, and fails to "name the individual offenders and allege separate acts of defamation as to each, including specific defamatory statements." See Fitzgerald v. Tucker, 737 So.2d 706, 713 (La. 1999)(citation omitted). Moreover, to the extent that Taffaro attributes to Bourgeois specific statements or conduct that Taffaro believes to be injurious to his reputation (such as that Bourgeois leaked to the

36

media "substantially bogus accusations...regarding credit card expenses"), he fails to allege that Bourgeois acted with actual malice. See Hardy v. Hartford Ins. Co., 236 F.3d 287, 292 (5th cir. 2001); New York Times Co. v. Sullivan, 376 U.S. 254 (1964).

IV.

There are two remaining motions:  the defendants' special motion to strike and the plaintiff's motion for gag order.

The defendants' special motion to strike is DENIED as moot. The plaintiff's motion for gag order, in which the plaintiff objects to six preservation letters (which he calls "faux-discovery letters") sent by counsel for the Parish Government and individual Parish Government defendants, is opposed.  The request for a gag order, in which Taffaro focuses on the need to deter the defendants' malicious conduct, is unsupported and is, therefore, DENIED.  If any of the lawyers or parties to this case engage in sanctionable conduct, the Court will consider a properly supported request for sanctions.

Accordingly, the defendants' motions to dismiss are GRANTED; the defendants' special motion to strike is DENIED as moot; and the plaintiff's motion for gag order is DENIED.  Taffaro's federal law claims against Peralta, McGoey, Dillon, Bourgeois, DeHarde, the St. Bernard Parish Government, and St. Bernard Parish are hereby dismissed.  However, if Taffaro in good faith believes that he can cure the pleading defects with respect to his abuse of rights and

abuse of process state law claims, he may file an amended complaint as to these two claims no later than 14 days from the date of this Order and Reasons.

Finally, the Court notes that the record is unclear as to how counsel for Jarrod Gourgues, who did not join in the other defendants' motions to dismiss, intends to proceed.


New Orleans, Louisiana, May 17, 2013


_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE